Alright, our final case or argument this morning is Mostra Exhibits v. Sentinel Ins. Co., Ltd. Good morning, Your Honors. May it please the Court? Good morning. I'm Charles Leminger. I'm here with my associate, Mylon Brandon. We're representing Mostra. I like his first name. Okay, I bet you do. Mostra Exhibits. As the Court knows, this is one of many business interruption cases that we brought before the courts, both state and federal, involving the COVID-19 business interruption lawsuits. However, Your Honor, it's very different in three important respects that we believe should be determinative. First of all, the great majority of cases, over 80% of them, have what's called a stand-alone absolute pollution, excuse me, virus exclusion. So it kind of ends the story right there. There's no coverage in those cases. Most of the remaining cases have no provision for virus coverage or an exclusion, and that's where the fight's been over whether or not direct physical loss or damage could be... Just to clarify a question, does the coverage issue in this case come down just to this limited coverage for virus provision? Yes. That's the only one addition? Yes, Your Honor. Okay. It is, because the courts have gone both ways on the direct physical loss or damage. There is no specific coverage for virus, but most of the courts have said that it requires some type of physical alteration or structural damage, which, of course, a virus cannot cause. But this case involves a special endorsement that's appended to my client's policy. And, in fact, that endorsement was listed in the declaration pages with a specific policy limit. So it was undoubtedly factored into the premium my client paid for that fungus, bacteria, and virus coverage. There's only a couple of other carriers that I'm aware of that have comparable communicable disease type coverage, which specifically covered a virus. And in both of those cases, most recently Marina Pacific and Amy's Kitchen, the California State Appellate Courts overruled the sustaining of a demur in favor of the insurance carriers. And we're asking this court to do the same thing with respect to overruling the trial court, the district court, with respect to the granting of a motion for judgment on the pleadings. Because there is specific virus coverage in this case, it's important that the policy be interpreted in such a way as to give effect to that coverage. And the policy is written to provide for that, as are the policies like Fireman's Fund and Factory Mutual that have the communicable disease comparable coverage. Because unlike all the other cases where the courts have said, I'm sorry, you need structural damage, this particular policy defines direct physical loss or damage as actually covering cost of removal. So, it's consistent with the promise of virus coverage. Removal would include, of course, all the cost of sanitation and cleansing measures that are necessary. It's clear that you need a specified cause of loss, and that's not an open-ended list. It's a discrete list, and there's not many items here that seem to apply. Exactly, Your Honor. And that's the third way this policy differs from all the other policies. When one can navigate through this over 100-page policy, you get to the special endorsement, and it says you need a specified cause of loss. It doesn't tell you where to find it. I've been doing this for 40 years. I had a hard time navigating through this policy, finding the specified causes of loss. The way Sentinel would incorporate it, you could never have a specified cause of loss for a virus. Ergo, it's illusory coverage, which is impermissible. Well, I mean, it's fungi and bacteria and virus, and if you have a flood, you know, one of the consequences of having a flood is quite often that there's fungus. Yeah. So that would be a specified cause of loss. For that particular risk or peril, Your Honor, that is true. However, there has to be coverage for each specified peril or risk for which my client was promised coverage. Otherwise, it's a date and switch. You can't say, oh, well, too bad. You can never have virus coverage, and this was an epidemic, and the insurance industry knew about epidemics as a SARS epidemic in 2003, which is why they adopted this discrete exclusion, absolute exclusion. But Sentinel said, no, we're going to provide virus coverage. You can't come back and say, but you can still have fungus coverage if you get – by the way, it's interesting how fungus bacteria – Can I interrupt? If you can answer Judge Collins' question, so what is the specified cause of loss here under the policy, under that carve-out limit of coverage? Yes.  We're pointing to two things listed, which are airplanes and vehicles, because it's a very broad – There's nothing else on the list, is it? They say windstorm, but as it says on the declaration page, my client's business is all indoors providing displays for trade shows and such. So obviously, although they cite one Nebraska case where somehow a tornado carried a pseudo rabies virus to an outdoor pen of pigs, and invited them to say, see, you can get virus coverage. Well, no, you can't for my client. And the rule of law, and it's quite well settled, is there has to be coverage in the insured circumstances, which are listed on the declaration page for each peril that's specified on the declaration page. That includes virus. Windstorm is not going to sweep through a building and cause the coronavirus. However, that specified cause of loss has a result of provision. It only has to be a result of a specified cause of loss. And the courts, including the Ninth Circuit, have interpreted that very broadly to be the equivalent of a rising out of to include incidental and minimal connections, Your Honor, and basically a but-for causation analysis. And in this case, we know, of course, that the virus came to the United States from Europe and Asia, other places, by airplanes. People would have carried it traveling in vehicles. And Sentinel wants to say, well, that's too attenuated, too remote. Well, causation is a factual question. You need to interpret the coverage provisions broadly. You need to interpret the exclusions. Narrowly, you have to give meaning to each term in the policy. And just like in the Marina Pacific case, the court said, yeah, I know you've got a mortality and disease exclusion, but you can't wipe out the communicable disease coverage. So if they're going to be in conflict, if there's two reasonable interpretations, the insured wins. The carrier wrote the policy. But is it reasonable to say that COVID-19 was, you know, that your losses through COVID was as a result of airplanes or vehicles? I mean, that doesn't seem like a reasonable reading. Not normally. But, again, I don't think anyone would ever say that. Well, Sentinel wrote the policy. And if you're going to cover a virus and you're going to list specified causes of loss, you have to provide one that can actually result in coverage for the virus. That's what they listed. And the but-for causation, anything in the chain of causation, would apply, again, however minimal or indirect, or, you know, what would be considered a very minor form of causation. And that's what we'd have to link to, or else it's illusory coverage. And, again, it should be a factual question. We cited two California Supreme Court cases, Garvey and Strobel. And, interestingly enough, this court, well, not this panel, but the Ninth Circuit, are ruled in mud pie that it's the spread of the virus that is the efficient, the predominant cause of the business interruption losses in California, the spread of the virus. And, indeed, in this particular case, in its denial letter, Sentinel wrote that you didn't show that specified cause of loss was the cause or the spread of the virus. So spreading the virus has been identified by them as a means to obtain coverage, and, indeed, the only means to obtain this particular coverage. So, again, it should be a factual question, and it should go in the insurer's favor because they wrote the policy or the promise of coverage as illusory. And, basically, it's a big switch. On the illusory question, the word rot is included in the list. Does that help your case that this is illusory? That's pretty straightforward, isn't it? If someone had a wet rot or dry rot case, I think the trial court identified that. It could help them get coverage for that type of risk or peril. So, to that degree, it's not illusory, right? It's still illusory as the virus, unless there is a means for someone to get coverage for virus because the endorsement doesn't talk about, in the title and in the declaration page, it doesn't talk about the wet rot or dry rot. Can you win if we find that it is not an illusory clause? I believe we can if you apply the broad interpretation to the result of a specified cause of loss. But I believe that the illusory provisions, and I cite the cases on the Pelliss opening brief, pages 40 through 46, or reply brief on pages 22 through 26, why you have to look at each risk, each peril separately to see if there's a meaningful basis for coverage. Okay. Do you want to save any of your time? Yes, if I might reserve the rest for you. Well, thank you. Okay. Very well. Okay. Let's hear from Sentinel Insurance, please. Thank you, Your Honor. May it please the Court. This is the first I've heard that Mostar is only pursuing a limited virus theory in this case, and I think it would be news to anybody who read their complaint. If you look at either the original complaint or the proposed amended complaint, which are at ER 76 or 527 in your appendix, there's a section called the loss. And it goes like this. As a result of the government orders and community infection of coronavirus around the areas where Mostar did its business, trade shows and conventions stopped, right? And it continues, the combined impacts of these and other actions taken to comply with the government orders, as well as these and other actions taken to comply, excuse me, as well as responses to the community infection of coronavirus adjacent to the insured properties, have caused a precipitous decline in business income. It's very easy to understand how Mostar suffered a precipitous decline in business income during the pandemic, given the nature of its business. It's very difficult to see how it has anything to do with their property, and therefore how it has anything to do with their property insurance policy. So, in my view, muck by controls here. This is a government orders case. What they allege is economic loss that is untied to damage to their property. It's untied to damage to their dependent properties, which would be their customers and suppliers. What you will find in both the complaint and particularly in the proposed amended complaint are allegations that the coronavirus was widespread. It was in and around the properties. It was in and around. There was particular customers who had outbreaks. None of these are allegations that there was actually damage caused by the virus, that there were steps taken to mitigate the damage caused by the virus, that there were things discarded, that there were sanitation measures taken. It's just not in any of the complaints. Yes, I'm sorry. He just said in response to my question that the only coverage provision at issue here is the limited coverage for virus provision. That's right. You said that, yes. Do you think muck by is controlling in your favor that that provision does not apply? Well, partially. So, I'd like to discuss that. So, it does contain that that provision contains a physical loss or damage requirement. The definition of that term, direct physical loss and direct physical damage, is controlled by muck by. The limited coverage also, it refers to loss or damage, a broader term. So, in most parts of the policy, including the business income, the extra expense, the other things that they actually pleaded below, you are required to show direct physical loss or direct physical damage for the limited coverage. If you satisfy that specified cause of loss condition, which we can discuss, and if you show that you've taken all reasonable means to preserve the property, then you can get coverage for loss or damage, which is, of course, broader than physical loss and physical damage. Physical loss and physical damage is subsumed in that definition. It's B1BI, I think, right? It's the first part of it. So, loss or damage means physical loss or physical damage, and then it also means the cost of accessing it and the cost of testing it. So, yes, there are additional components to the loss or damage that is covered in the limited coverage provision, but none of that affects the meaning of physical loss or physical damage, which is what this court addressed in MUDPI. Some of the California cases have been willing to entertain the notion that the virus on surfaces could count as a physical damage and have allowed cases to go forward. So I'm kind of surprised that you want to sort of wade into that issue instead of addressing sort of the airplane or vehicle issue. I'd be happy to address the airplane or vehicle issue. I don't think I need to because in those cases that Your Honor is addressing, we have different pleading standards, different pleadings, most importantly, and different policies. Both of those cases, Marine Pacific and Amy's Kitchen, are fireman's fund cases that have a communicable disease coverage extension. Mr. Landry keeps referring to this as though we also have a communicable disease coverage extension, but we have a virus endorsement that has a general exclusion for loss or damage caused directly or indirectly by a virus, and then a limited coverage carve-out to that. And our limited coverage carve-out, which is where he's placing most of his emphasis now, covers loss or damage and defines it in those ways that I just discussed. The communicable disease coverage extension in Amy's Kitchen and in Marine Pacific defines physical loss and physical damage as including these things. So, Counsel, can you address your opposing counsel's argument about loose recovery with respect to virus? Sure. Well, I think every court that has considered this exact argument, and there are many, is not that unique a policy. There's hundreds of decisions on our policy. This court has addressed it in the B.A. Lacks and Protege decisions recently. The Second Circuit, the Sixth, Seventh, and Eighth Circuits have addressed our policy. But in all of those cases, address an illusory coverage argument. All of them that do make the same point that your honors did, that there is coverage here for rot, for fungi, and bacteria, and that these are things that one can easily imagine could be caused by a result from a specified cause of loss. I'd also note that the illusory coverage doctrine generally applies when you have a coverage extension, where there's coverage extended for something, and then a limitation or an exclusion that effectively erases it. And what the doctrine says is, well, you can't read that limitation or exclusion to erase this coverage because then it would become illusory. I know of not a single case where you can create coverage through an illusory coverage argument, where, in fact, you have an exclusion, you have a limited carve-out, and just because some parts of that limited carve-out might be hard to satisfy, it somehow rendered illusory. So I gather your position is there are certain predicates that have to be alleged before you get to what he's now talking about, and he hasn't done that, basically. He's changed it. Well, even for what he's now talking about, he hasn't satisfied that, okay? Because if we're looking at the limited coverage provision itself, which is just down in front of me, this is at 465 of your appendix if you want to look at it, there are basically three conditions. You have to have the specified cause of loss condition or equipment accident breakdown, which is separately defined, not an issue here. Again, I'm happy to discuss that. I also think it's not a reasonable interpretation of those words to think that the coronavirus was caused by airplanes. I think there's four cases that have considered this argument. All have found it to be specious. You also have to show that you have taken all reasonable means to save and preserve the property from further damage at the time of the occurrence. So, yes, they do allege, I think implausibly, they allege the specified cause of loss condition in the proposed amended complaint. They do not allege that they took all reasonable means to preserve the property. You also need to have the loss or damage that we talked about. They don't have direct physical loss or physical damage. I think Mr. LeMaire conceded that. What they say they have, well, what they argue they have is the cost of removing the virus. But that's also not alleged in either the complaint or the proposed amended complaint. And that's, again, different from Amy's Kitchen, Marina Pacific, where there were specific allegations under a different policy and under much more liberal pleading standards that there was actual damage caused by the virus to the property. In Marina Pacific, they said they had to discard property. This court, in the Tao Holdings case a few weeks ago, interpreted Marina Pacific that way, limited to allegations where there's a discarding of property. In Amy's Kitchen, there were allegations that they had to sanitize, that they had to erect barriers and do some temperature control, all sorts of allegations that would satisfy that policy's specific communicable disease extension. We don't have that communicable disease extension in our policy, and we don't have those allegations. And we're also in federal court where a plausibility standard would apply. When we apply the plausibility standard, do we assess it as of now or as of when the complaint was filed? I don't know if that makes a difference here, but we know a lot more than we did, say, in March 2020. I don't think it's plausible now to say the coronavirus particles physically alters the tabletop. But, I mean, was it plausible back in March 2020? I don't know. But, I mean, what time frame should we assess it? I think the answer is that you assess it at the time the complaint is filed, and in your case, at the time the district court assessed it. But I fully agree it doesn't matter. It was not plausible then, and it's not plausible now. So none of the conditions of the limited coverage are satisfied. Even if this is what the case was about, and it wasn't about a purely economic loss, which I think is what you'll find in the complaint, I think Your Honors would have to affirm based on the failure to plausibly allege the conditions of this coverage. Thank you. You're welcome. Thank you very much. All right. Here's the wide depth. Thank you, Your Honor. We do elect an amended complaint, ERA 82, about how the specified causes of loss come into play and how, in fact, there was a spread of the virus through the specified causes of loss we mentioned. We did. Counsel, isn't he right, though? You've got certain conditions, precedent, that you have to allege. You really haven't alleged all of those, have you, to get to where you are today in terms of what you're asking us to find on? I believe we have, Your Honor. We have the pleading stage. We did ask for a leave to amend on ER 75. We talked about how the virus bonds with surfaces. We have a declaration from a virologist of how it requires constant cleaning. You said if you had amended, you would have satisfied. Well, we submitted an amended complaint. The district court invited us to, and she denied our motion to file the amended complaint. But I believe those allegations are there at ER 75, ER 82, and other pages. Again, we're at the pleading stage. We don't have to prove anything, but we did sufficiently allege it, including that the contamination spread to the various dependent properties, including hotels and convention centers. We even have a long list from the Department of Health of all the places in San Diego where a client would do business that were proved to be contaminated. Your Honor, let me ask my colleague whether or not there are additional questions of counsel. I'm sure you have lots, lots more to say. Just one more thing, if I could. You want to talk about something about your family? I'd love to do that. But, no, I just want to say the other courts did not address these issues. For whatever reason, the cases in the Ninth Circuit were all published on side 1 to 2 pages. Other attorneys did not put these arguments before the court. We believe they're determinative, and I believe the cases we cited in our brief were dispositive. All right. Well, thank you very much, Your Honor. Thanks, Your Honor. Thanks, gentlemen. I appreciate it. The case is submitted, and the court stands in recess for the day.
judges: SMITH, COLLINS, LEE